Curia, per O’Neall, J.
The duties of the Master in Equity, for Charleston, according to law, and the practice of the Court of which he is an officer, are partly judicial and partly ministerial. In making a sale under a decree, his duty is purely ministerial. He is to do a specific act in. a certain and defined way; and to do it, he is clothed with every proper power and authority. In order to sell personal property, he must be regarded not only as the agent of the parties, but as being invested by the decree with their legal estate. The cases of Robert Herriott, Commissioner, ads. Richard Singleton, decided at this place in 1832 and 1833, by the Court of Appeals, are conclusive authority on the point.
Having the legal estate, it is to be inquired, how is he to divest himself of it? Unquestionably by a sale, according to the decree. A sale is not effected by merely “putting up” and “ knocking down” at public auction, a chattel. To *253 complete the sale, there must be a delivery of possession to the purchaser. In order to make this delivery, the Master in Equity must not only have the possession when he sells, but must retain it until he delivers the property to the purchaser. In this respect the sheriff and the Master stand upon the same ground. Both undertaking to make a sale, the former under a levy, and the latter under a decree — must do it legally to discharge themselves from liability. In addition to effecting the sale, the Master’s duty under the decree in this case required that he should take bond and security from the purchaser; this last duty he could not perform, inasmuch as he did not deliver possession of the slave sold. If it was true that the defendant never had possession of the slave, it is possible he might escape the liability n’ow cast upon him; but when the slaves, under the direction of Moses the auctioneer, came to the sale, which he made for the defendant, they were in law and, in fact, in his possession: he sold the slaves to Laurens, and it was clearly his duty to deliver the possession and take the security required by the decree ; if he thought proper to delay these acts to another time, and a loss thereby happened, he, not the plaintiff, must bear it, for it arises from his neglect of duty. The defendant, however, is liable, from his own admissions, for the value of the slave. He has charged and was allowed his commission on the sale of the slave.' This was in itself an admission that he had legally sold the slave, and that the payment of the purchase money was secured according to the decree; so, too, the defendant’s admission, (as the witness, Hen. Hayne, understood him,) that he was liable for the price of the slave, is enough to charge him. — The only possible ground on which the defendant could escape this liability, was, that one of the legatees attended the sale, and heard the directions of the slave, after the sale, to go home, and did not object to it. If the jury had thought this evidence enough to justify them in concluding that he assented to the direction, and that he was the agent of all the parties, it is barely possible that they might have found for the defendant; this ground was presented to them, but they thought proper to reject it, and find on other grounds against the defendant, as they had the right to do.
The motion is dismissed.